1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IN THE UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHAEL DWIGHT BUTTS,<br><br>Plaintiff,<br><br>v.<br><br>PASCUAL IBARRA, et al.,<br><br>Defendants. | CASE NO. 1:20-cv-00273-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION BE DISMISSED, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM, FAILURE TO PROSECUTE, AND FAILURE TO COMPLY WITH COURT ORDER<br><br>(ECF No. 1)<br><br>TWENTY-ONE DAY DEADLINE<br><br>ORDER FOR CLERK TO PROVIDE PLAINTIFF WITH CIVIL RIGHTS COMPLAINT FORM |

Michael Dwight Butts ("Plaintiff"), is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff filed the complaint commencing this action on February 24, 2020. (ECF No. 1).

The Court screened Plaintiff's complaint on July 26, 2020. (ECF No. 6). The Court found that Plaintiff failed to state a claim. (*Id.*). The Court gave Plaintiff thirty days from the date of service of the order to file an amended complaint or to notify the Court that he wants to stand on his complaint, subject to the Court issuing findings and recommendations to a district judge consistent with the screening order. (*Id*. at 17). The Court warned Plaintiff that "[f]ailure to comply with this order may result in the dismissal of this action." (*Id*.)

The thirty-day period has expired, and Plaintiff has not filed an amended complaint or otherwise responded to the Court's order.  Accordingly, for the reasons described in the screening order (ECF No. 6) and below, the Court will recommend that Plaintiff's case be dismissed for failure to state a claim, failure to comply with a court order, and failure to prosecute.

## I.    SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).  As Plaintiff is proceeding *in forma pauperis* (ECF No. 6), the Court may also screen the complaint under 28 U.S.C. § 1915.  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).  The mere possibility of misconduct falls short of meeting this plausibility standard.  *Id.* at 679.  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  Additionally, a plaintiff's legal conclusions are not accepted as true.  *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers."  *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that

*pro se* complaints should continue to be liberally construed after *Iqbal*).

## II.   SUMMARY OF PLAINTIFF'S COMPLAINT

Plaintiff includes seven claims in his complaint, which are separated by the named defendants. His allegations are as follows:

### A.   Claim I: Defendant Pascual Ibarra

Defendant Ibarra ("Ibarra") masterminded a false CDCR 115 Rules Violation Report (#6221144) (the "RVR"). It falsely alleged a felonious prisoner transgression, named uninvolved staff members, false statements, forged signatures and false evidence. The RVR was buttressed by CDCR 837 Crime / Incident Report # FACA-18-12-0332 (the "CIR").

Ibarra began the undertaking on December 19, 2018, which alleged events on May 16, 2018. On or about April 4, 2019, Ibarra referred the matter to local authorities for criminal prosecution, which they accepted as felony complaint #DF014337A on May 5, 2019. On August 8, 2019, Ibarra committed perjury in a preliminary hearing in *People v. Michael Dwight Butts*. Ibarra's actions guaranteed a fatal due process destiny and heralded catastrophic hardships, including excessive punitive administrative and judicial material detriments, adversities, and indignities.

### B.   Claim II Defendants Jose Ceja and Rolando Lira

Defendants Ceja and Lira ("Ceja" and "Lira") fabricated and falsified their involvement in the RVR and the CIR. Neither Ceja nor Lira had direct or indirect interaction with Plaintiff concerning the events of May 16, 2018. This behavior sabotaged Plaintiff's right to due process and bordered on collusion.

### C.   Claim III: Defendants L. Diaz and O. Montoya

Defendants Diaz and Montoya ("Diaz" and "Montoya") consciously neglected to intervene to foil the breach of Plaintiff's rights. They obstructed justice during the investigative phase of the RVR hearing prep. They squandered a pivotal opportunity to intercede with verity and insight when queried by Defendant Investigative Employee Mark Ogma ("Ogma") on January 14, 2019. They knew the truth but feigned memory loss in league with verbatim responses.

**D.      Claim IV: Defendants B. Xiong and K. Dennis**

During the disciplinary proceedings for the RVR, Defendants Xiong and Dennis ("Xiong" and "Dennis") failed to tell the truth about the events of May 16, 2018. Both knew the felonious assertions were erroneous and pernicious. However, Xiong feigned memory loss and Dennis prevaricated.

**E.      Claim V: Defendant Ogma**

On February 10, 2019, Ogma furtively entered into the CDCR Strategic Offender Management System ("SOMS") a fictious affirmation, stating he personally issued the RVR's disciplinary hearing results to Plaintiff. On June 4, 2019, he averred the verity of the SOMS denotation to Defendant Appeal Coordinator O. Magallanes ("Magallanes") during the CDCR 602 Appeal # NKSP-B-19-02058 Second Level Review. In fact, Ogma did not issue Plaintiff a final copy of the RVR. Ogma's false statements induced due process embroilments and drubbings, precluding Plaintiff redress of his negative disciplinary hearing outcome. No one issued a final copy to Plaintiff until Captain Pedro J. Chanelo, in response to a CDCR 602 Appeal on May 17, 2019, which prompted cancelling the hearing appeal due to time constraint violations deduced from Ogma's wrongful entry and avowal.

**F.      Claim VI: Defendant Magallanes**

On February 26, 2019, Magallanes canceled Prisoner Citizen's Complaint # NKSP-B-19-00719. On March 18, 2019, Magallanes denied cancellation appeal #NKSP-B-19-00893, despite compelling mitigating confirmation warranting reconsideration. On June 4, 2019, Magallanes denied cancellation appeal # NKSP-B-02136, despite problematic procedural anomalies that warranted inquiry. On September 25, 2019, Magallanes rebuffed advice from the Office of Internal Affairs to vet the clamor.

**G.      Claim VII: Defendant Kelly Santoro**

Defendant Warden and Hiring Authority Kelly Santoro ("Santoro") sanctioned Plaintiff's unsubstantiated, protracted housing in administrative segregation, his questionable indefinite housing in a bleak Reception Center facility, and systematically stonewalled Plaintiff's petitions for solace and redress without deducing credibility, statutory or compulsory duty or constitutional

gravity mandating administrative attention.

On August 9, 2018 and October 25, 2018, Santoro, as warden, imposed consecutive 90—day extensions to administrative segregation. On December 20, 2018, as warden, Santoro endorsed wretched clearinghouse in Reception Center despite available entitled mainline housing. As hiring authority on February 26, 2019, Santoro vetoed Prisoner Citizen's Complaint #NKSP-B-19-00719. As hiring authority, on June 4, 2019, vetoed Staff Complaint #NKSP-B-19-02058. As warden and hiring authority, on September 10, 2019, rebuffed advice from the Office of Internal Affairs to vet the clamor.

## III.   ANALYSIS OF PLAINTIFF'S COMPLAINT

### A.   Section 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law.  *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law").  A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'"

*Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).  "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms."  *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743).  This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause."  *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights.  *Iqbal*, 556 U.S. at 676-77.  In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff.  *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged.  *Iqbal*, 556 U.S. at 676-77; *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978).  To state a claim for relief under section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that the supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation."  *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (citations and internal quotation marks omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

For instance, a supervisor may be liable for his "own culpable action or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous

indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (citations, internal quotation marks, and alterations omitted).

**B.    False Allegations in RVR and Corresponding Disciplinary Proceedings**

    1.    <u>Legal Standards</u>

        a.    Due Process Clause

            (1)    General Rule

A prison official does not violate a prisoner's constitutional rights merely by filing a false rules violation report. *See Muhammad v. Rubia*, 2010 WL 1260425, at *3 (N.D. Cal., Mar. 29, 2010), *aff'd*, 453 Fed. App'x 751 (9th Cir. 2011) ("[A] prisoner has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. As long as a prisoner is afforded procedural due process in the disciplinary hearing, allegations of a fabricated charge fail to state a claim under § 1983." (citations omitted)); *Harper v. Costa*, 2009 WL 1684599, at *2-3 (E.D. Cal., June 16, 2009), *aff'd*, 393 Fed. Appx. 488 (9th Cir. 2010) ("Although the Ninth Circuit has not directly addressed this issue in a published opinion, district courts throughout California . . . have determined that a prisoner's allegation that prison officials issued a false disciplinary charge against him fails to state a cognizable claim for relief under § 1983.").

A false allegation against a prisoner does *not* create a claim so long as (1) the prisoner receives procedural due process before there is a deprivation of liberty as a result of false allegations, and (2) the false allegations are not in retaliation for the prisoner exercising constitutional rights.  Specifically, the Ninth Circuit held in *Hernandez v. Johnston*, 833 F.2d 1316 (9th Cir. 1987) that inaccurate information in a prison record did not violate the prisoner's due process rights.  *Id.* at 1318 ("Magistrate Burgess did not discuss Hernandez' separable claim of a due process right to accurate information in his prison record.  We address the issue, and hold that Hernandez was not deprived of liberty by the presence of the challenged statements.").

While the Ninth Circuit has not directly addressed whether a false rules violation report alone violates a prisoner's constitutional rights, this specific issue was thoroughly addressed in a decision of this district, which was affirmed by the Ninth Circuit in an unpublished decision:

A prisoner has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest.  *See Sprouse v. Babcock,* 870 F.2d 450, 452 (8th Cir.1989); *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986).  As long as a prisoner receives procedural due process during his disciplinary hearing, a prisoner's allegation of a fabricated prison disciplinary charge fails to state a cognizable claim for relief under § 1983.  *See Freeman,* 808 F.2d at 951 (the filing of a false disciplinary charge against a prisoner is not actionable under § 1983 if prison officials provide the prisoner with procedural due process protections); *Hanrahan v. Lane,* 747 F.2d 1137, 1140–41 (7th Cir.1984) ("[A]n allegation that a prison guard planted false evidence which implicates an inmate in a disciplinary infraction fails to state a claim for which relief can be granted where the procedural due process protections as required in *Wolff v. McDonnell* are provided.").

Although the Ninth Circuit has not directly addressed this issue in a published opinion, district courts throughout California relying on the cases cited above have determined that a prisoner's allegation that prison officials issued a false disciplinary charge against him fails to state a cognizable claim for relief under § 1983.  *See, e.g., Conner v. Winslow,* No. EDCV 07–218 AG (AN), 2009 WL 1549737 at *18 (C.D. Cal. June 1, 2009); *Williams v. Foote,* No. CV 08–2838 CJC (JTL), 2009 WL 1520029 at *7 (C.D.Cal. May 28, 2009); *Salisbury v. Miller,* No. C 08–4680 MHP (pr), 2009 WL 743925 at *2 (N.D.Cal. Mar.18, 2009); *Meraz v. Reppond,* No. C 08–4540 MHP (pr), 2009 WL 723841 at *2 (N.D.Cal. Mar.18, 2009); *Rodgers v. Reynaga,* No. CV 1–06–1083 JAT, 2009 WL 62130 at *2 (E.D.Cal. Jan.8, 2009); *Drake v. Berg,* No. C 07–3844 PJH (PR), 2008 WL 4482848 at *1 (N.D.Cal. Oct.1, 2008); *Moore v. Thomas,* No. C 06–2105 SBA (PR), 2008 WL 4447726 at *4 (N.D.Cal. Sept.30, 2008); *Deadmon v. Grannis,* No. 06–cv–1382 LAB (WMC), 2008 WL 595883 at *10 (S.D.Cal. Feb. 29, 2008); *Carrillo v. Pena,* No. CIV S–06–2924 RRB DAD, 2007 WL 2994689 at *2 (E.D.Cal. Oct.12, 2007); *Player v. Salas,* No. 04–cv–1761 LAB (WMc), 2007 WL 2781102 at *7 (S.D.Cal. Sept. 21, 2007), *aff'd* 2009 WL 890967 (9th Cir. Apr.3, 2009); *Brookins v. Terhune,* No. CIV S–03–0916 GEB JFM, 2005 WL 3262940 at *4 (E.D.Cal. Nov.28, 2005), *adopted by* 2006 WL 647975, *aff'd* 2007 WL 2827544 (9th Cir. Sept.27, 2007).

*Harper v. Costa,* No. 2:07-cv-02149-LKK-DAD, 2009 WL 1684599, at *2–3 (E. D. Cal. June 16, 2009), *subsequently aff'd*, 393 F. App'x 488 (9th Cir. 2010).

(2)   <em>Deveraux</em> Exception for Criminal Charges

In the criminal context and in the context of certain administrative proceedings, deliberately false allegations can give rise to a due process claim where there was a resulting deprivation of liberty.  *Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001) (en banc) ("[T]here is a clearly established constitutional due process right not to be subjected to criminal

8

charges on the basis of false evidence that was deliberately fabricated by the government.”);

*Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101 (9th Cir. 2010) (denying summary

judgment on a fabrication of evidence claim against a defendant based on evidence that the

defendant falsified evidence that was used in an administrative proceeding, and which led to the

revocation of Plaintiff's foster care license and loss of guardianship of two minor children);

*Chappell v. Bess*, 2012 WL 3276984, at *22 (E.D. Cal. Aug. 9, 2012) (“The court finds that

plaintiff has alleged the deprivation of a cognizable liberty interest based on his allegations that,

as a result of defendants' alleged fabrication of evidence, plaintiff was subjected to unwarranted

disciplinary proceedings and criminal prosecution, and was retained in administrative segregation

for more than two years, the latter, particularly if unwarranted, constituting an atypical and

significant hardship ... in relation to the ordinary incidents of prison life.” (alteration in original)

(citation and internal quotation marks omitted)).

　　　“To prevail on a § 1983 claim of deliberate fabrication, a plaintiff must prove that (1) the

defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the

plaintiff's deprivation of liberty.  To establish the second element of causation, the plaintiff must

show that (a) the act was the cause in fact of the deprivation of liberty, meaning that the injury

would not have occurred in the absence of the conduct; and (b) the act was the ‘proximate cause’

or ‘legal cause’ of the injury, meaning that the injury is of a type that a reasonable person would

see as a likely result of the conduct in question.”  *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir.

2017) (citations omitted).  In addition, a plaintiff must wait until the criminal case finishes before

bringing the action. *McDonough v. Smith*, 139 S. Ct. 2149, 2156 (2019) (holding an acquitted

plaintiff “could not bring his fabricated-evidence claim under § 1983 prior to favorable

termination of his prosecution”).[1]

---

[1] While neither the Ninth Circuit nor Supreme Court have clearly addressed it, it is likely that the criminal case must end in a plaintiff's favor. In *McDonough*, the Supreme Court suggested without holding that was a requirement. *See id.* at 2156, 2160 (“As already explained, McDonough's claim remains most analogous to a claim of common-law malicious prosecution, even if the two are not identical. *Heck* explains why favorable termination is both relevant and required for a claim analogous to malicious prosecution that would impugn a conviction, and that rationale extends to an ongoing prosecution as well: The alternative would impermissibly risk parallel litigation and conflicting judgments. If the date of the favorable termination was relevant in *Heck*, it is relevant here.” (citations omitted)). But the Supreme Court noted it was *not* deciding the contours of a fabricated evidence claim. *See id.* at 2155 n.2. It appears the Ninth Circuit has not squarely addressed the issue.

b.      Equal Protection

The Equal Protection Clause requires that persons who are similarly situated be treated alike.  *City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439 (1985); *Hartmann v. California Dep't of Corr. & Rehab.,* 707 F.3d 1114, 1123 (9th Cir. 2013); *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013); *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008).  To state a claim, Plaintiff must show that Defendants intentionally discriminated against him based on his membership in a protected class, *Hartmann*, 707 F.3d at 1123; *Furnace*, 705 F.3d at 1030, *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003); *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166-67 (9th Cir. 2005); *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, *Engquist v. Oregon Department of Agr.*, 553 U.S. 591, 601-02 (2008); *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008); *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008).

2.      <u>Analysis</u>

a.      Due Process Clause

Here, Claims I-IV all allege that certain defendants made false statements in the RVR and the resulting disciplinary hearing. Such allegations, alone, do not amount to cognizable constitutional violations. *See Harper*, 2009 WL 1684599, at *2–3.  For that reason, Plaintiff's allegations do not state a cognizable claim for violation of his constitutional rights.

Such allegations can state a constitutional claim only if (1) his disciplinary hearing violated procedural due process, (2) the false allegations were made in retaliation for Plaintiff exercising his constitutional rights, or (3) the false statement was used to subject Plaintiff to a criminal proceeding in accordance with *Devereaux*.

Regarding the procedures for Plaintiff's disciplinary hearing, Plaintiff alleges he received a hearing. While he alleged there were procedural problems with the hearing, those improprieties occurred *after* the deprivation. Moreover, Plaintiff did not allege the false allegations were made in retaliation for Plaintiff exercising a constitutional right.

1   Plaintiff has not stated a *Devereaux* claim. While he alleges defendants' deliberate, false

2   allegations led to a criminal proceeding, he does not allege that he was injured by this.  He does

3   not allege that he lost a liberty interest because of the criminal proceeding.  He also does not

4   allege that the criminal proceeding has ended.

5                               b.   Equal Protection Clause

6   Plaintiff's allegations are not sufficient to state an equal protection claim. Plaintiff has not

7   alleged facts demonstrating that he was intentionally discriminated on the basis of his

8   membership in a protected class or that he was intentionally treated differently than other

9   similarly situated inmates without a legitimate state purpose.

10  **C.   Procedural Due Process Claim Related to Disciplinary Hearing**

11           1.   Legal Standards

12                  a.   Whether Due Process Clause Applies to Disciplinary Proceedings

13  The United States Supreme Court, in a case involving a disciplinary proceeding that

14  resulted in a punishment of thirty days in solitary confinement, provided the following guidance

15  in determining when there is a deprivation of liberty interests such that procedural due process is

16  required in the prison context:

> 17  States may under certain circumstances create liberty interests which are protected
> 18  by the Due Process Clause.  See also *Board of Pardons v. Allen,* 482 U.S. 369,
> 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987).  But these interests will be generally
> 19  limited to freedom from restraint which, while not exceeding the sentence in such
> an unexpected manner as to give rise to protection by the Due Process Clause of
> 20  its own force, see, *e.g., Vitek,* 445 U.S., at 493, 100 S.Ct., at 1263–1264 (transfer
> to mental hospital), and *Washington,* 494 U.S., at 221–222, 110 S.Ct., at 1036–
> 21  1037 (involuntary administration of psychotropic drugs), nonetheless imposes
> atypical and significant hardship on the inmate in relation to the ordinary
> 22  incidents of prison life….
>
> 23
> This case, though concededly punitive, does not present a dramatic departure
> 24  from the basic conditions of Conner's indeterminate sentence.  Although Conner
> points to dicta in cases implying that solitary confinement automatically triggers
> 25  due process protection, *Wolff, supra,* at 571, n. 19, 94 S.Ct., at 2982, n. 19; *Baxter
> v. Palmigiano,* 425 U.S. 308, 323, 96 S.Ct. 1551, 1560, 47 L.Ed.2d 810 (1976)
> 26  (assuming without deciding that freedom from punitive segregation for " 'serious
> misconduct' " implicates a liberty interest, holding only that the prisoner has no
> 27  right to counsel) (citation omitted), this Court has not had the opportunity to

28

address in an argued case the question whether disciplinary confinement of inmates itself implicates constitutional liberty interests.  We hold that Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest. The record shows that, at the time of Conner's punishment, disciplinary segregation, with insignificant exceptions, mirrored those conditions imposed upon inmates in administrative segregation and protective custody.  We note also that the State expunged Conner's disciplinary record with respect to the "high misconduct" charge nine months after Conner served time in segregation.  Thus, Conner's confinement did not exceed similar, but totally discretionary, confinement in either duration or degree of restriction. Indeed, the conditions at Halawa involve significant amounts of "lockdown time" even for inmates in the general population.  Based on a comparison between inmates inside and outside disciplinary segregation, the State's actions in placing him there for 30 days did not work a major disruption in his environment.

Nor does Conner's situation present a case where the State's action will inevitably affect the duration of his sentence. Nothing in Hawaii's code requires the parole board to deny parole in the face of a misconduct record or to grant parole in its absence, Haw.Rev.Stat. §§ 353–68, 353–69 (1985), even though misconduct is by regulation a relevant consideration, Haw.Admin.Rule § 23–700–33(b) (effective Aug. 1992).  The decision to release a prisoner rests on a myriad of considerations.  And, the prisoner is afforded procedural protection at his parole hearing in order to explain the circumstances behind his misconduct record. Haw.Admin.Rule §§ 23–700–31(a), 23–700–35(c), 23–700–36 (1983).  The chance that a finding of misconduct will alter the balance is simply too attenuated to invoke the procedural guarantees of the Due Process Clause.  The Court rejected a similar claim in *Meachum,* 427 U.S., at 229, n. 8, 96 S.Ct., at 2540 (declining to afford relief on the basis that petitioner's transfer record might affect his future confinement and possibility of parole).

*Sandin v. Conner*, 515 U.S. 472, 483–87 (1995) (footnotes omitted).  Thus, in *Sandin*, the

Supreme Court held that neither thirty days in solitary confinement nor issuance of an RVR that

could be used in parole proceedings were substantial enough deprivations of liberty interests to

trigger procedural due process protections.

                         b.      If Due Process Applies, What Process Plaintiff May Receive

To the extent that Plaintiff is entitled to due process under the legal standards discussed

above, Plaintiff retains his right to due process subject to the restrictions imposed by the nature of

the penal system.  *Wolff*, 418 U.S. at 556.  "Prison disciplinary proceedings are not part of a

criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not

apply."  *Id.*

*Wolff* established five constitutionally mandated procedural requirements for disciplinary proceedings.  First, "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." *Id.* at 564.  Second, "at least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the [disciplinary committee]." *Id.*  Third, "there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)).  Fourth, "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Id.* at 566. And fifth, "[w]here an illiterate inmate is involved [or] the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or … to have adequate substitute aid … from the staff or from a[n] … inmate designated by the staff." *Id.* at 570.

Additionally, "some evidence" must support the decision of the hearing officer. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985).  The standard is not particularly stringent and the relevant inquiry is whether "there is any evidence in the record that could support the conclusion reached…." *Id.* at 455–56. Written statements by the factfinder must be provided to the prisoner:

> Written records of proceedings will thus protect the inmate against collateral consequences [such as those incident to prison transfers or parole decisions] based on a misunderstanding of the nature of the original proceeding. . . . Without written records, the inmate will be at a severe disadvantage in propounding his own cause to or defending himself from others."

*Wolff*, 418 U.S. at 565; *accord King v. Wells*, 760 F.2d 89, 93 (6th Cir. 1985) ("*Wolff* requires that a prisoner receive a written statement by the factfinders.").

### 2.  Analysis

In Claim V, Plaintiff alleges Ogma falsely claimed he provided the disciplinary hearing

13

results to Plaintiff but in fact Plaintiff never received the disciplinary hearing results until it was too late to appeal.

The Court turns to *Sandin* to determine whether the Due Process Clause applies. Under *Sandin*, a prisoner must show he suffered an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 472.

Plaintiff alleges that he "predictably incurred and endured extraordinarily severe and excessive punitive administrative and judicial detriments, adversities, and indignities consequent to Defendant's subterfuge." (ECF No. 1 at 10-11). These conclusory allegations are not enough. Plaintiff failed to allege state, exactly, those hardships are in order to conclude that, if Plaintiff's allegations are true, the hardships posed an atypical and significant hardship on Plaintiff in relation to the ordinary incidents of prison life. The complaint does not do so. Hence, Plaintiff fails to state such a claim.

**D.      Grievance-Related Claims**

        1.      Federal Rules of Civil Procedure 18 and 20

                a.      Legal Standards

A complaint must comply with the requirements of Federal Rules of Civil Procedure 18 and 20. Under these rules, a plaintiff may not proceed on a myriad of unrelated claims against different defendants in a single action. Fed. R. Civ. P. 18(a), 20(a)(2).

> The controlling principle appears in Fed. R. Civ. P. 18(a): 'A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.' Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g).

*K'napp v. California Dept. of Corrections*, 2013 WL 5817765, at *2 (E.D. Cal., Oct. 29, 2013), *aff'd sub nom. K'napp v. California Dept. of Corrections & Rehabilitation*, 599 Fed. Appx. 791 (9th Cir. 2015) (alteration in original) (quoting *George v. Smith*, 507 F.3d 605, 607 (7th Cir.

1    2007). *See also* Fed. R. Civ. P. 20(a)(2) ("Persons . . . may be joined in one action as defendants

2    if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with

3    respect to or arising out of the same transaction, occurrence, or series of transactions or

4    occurrences; and (B) any question of law or fact common to all defendants will arise in the

5    action.").

6                                            b.       Analysis

7            Plaintiff did not comply with Rules 18 and 20. While many of the allegations concern a

8    May 16, 2018 incident and its aftermath, it is unclear how Plaintiff's allegations in Claims VI and

9    VII, which appear to concern prison grievances, relate to the incident.

10                                  2.       Merits of the Claims

11           Even if Plaintiff had complied with Rules 18 and 20, Claims VI and VII would still fail.

12           "[A prison] grievance procedure is a procedural right only, it does not confer any

13   substantive right upon the inmates." *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993)

14   (alteration in original) (quoting *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); *see also*

15   *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals

16   because no entitlement to a specific grievance procedure); *Massey v. Helman*, 259 F.3d 641, 647

17   (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); *Mann v.*

18   *Adams*, 855 F.2d 639, 640 (9th Cir. 1988).  "Hence, it does not give rise to a protected liberty

19   interest requiring the procedural protections envisioned by the Fourteenth Amendment." *Azeez*,

20   568 F. Supp. at 10; *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

21           Claims VI and VII both concern alleged failures to improperly process Plaintiff's prison

22   grievances. For the reasons above, such allegations do not amount to a constitutional violation.

23   **IV.      FAILURE TO FILE RESPONSE TO SCREENING ORDER**

24           Despite the Court's order for Plaintiff to file a response within 30 days of the order,

25   Plaintiff failed to file any response to the Court's screening order.

26           "In determining whether to dismiss a[n] [action] for failure to prosecute or failure to

27   comply with a court order, the Court must weigh the following factors: (1) the public's interest in

28   expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of

prejudice to defendants/respondents; (4) the availability of less drastic alternatives; and (5) the public policy favoring disposition of cases on their merits." *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002) (citing *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992)).

"'The public's interest in expeditious resolution of litigation always favors dismissal.'" *Id.* (quoting *Yourish v. California Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999)). Accordingly, this factor weighs in favor of dismissal.

As to the Court's need to manage its docket, "[t]he trial judge is in the best position to determine whether the delay in a particular case interferes with docket management and the public interest…. It is incumbent upon the Court to manage its docket without being subject to routine noncompliance of litigants...." *Pagtalunan*, 291 at 639. Plaintiff has failed to respond to the Court's screening order. This failure to respond is delaying the case and interfering with docket management. Therefore, the second factor weighs in favor of dismissal.

Turning to the risk of prejudice, "pendency of a lawsuit is not sufficiently prejudicial in and of itself to warrant dismissal." *Id.* at 642 (citing *Yourish*, 191 F.3d at 991). However, "delay inherently increases the risk that witnesses' memories will fade and evidence will become stale," *id.* at 643, and it is Plaintiff's failure to comply with a court order and to prosecute this case that is causing delay. Therefore, the third factor weighs in favor of dismissal.

As for the availability of lesser sanctions, at this stage in the proceedings there is little available to the Court which would constitute a satisfactory lesser sanction while protecting the Court from further unnecessary expenditure of its scarce resources. Considering Plaintiff's incarceration and *in forma pauperis* status, monetary sanctions are of little use. And, given the stage of these proceedings, the preclusion of evidence or witnesses is not available.

Finally, because public policy favors disposition on the merits, this factor weighs against dismissal. *Id.*

After weighing the factors, the Court finds that dismissal with prejudice is appropriate.

## V.    CONCLUSION AND RECOMMENDATIONS

For the foregoing reasons, the Court HEREBY RECOMMENDS that:

1.    This action be dismissed with prejudice for failure to state a claim, failure to

prosecute, and failure to comply with a court order; and

      2.     The Clerk of Court be directed to close this case.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Additionally, IT IS ORDERED that the Clerk of Court is directed to assign a district judge to this case.

IT IS SO ORDERED.

Dated:   **August 11, 2020**         /s/ *Erica P. Grosjean*
                                     UNITED STATES MAGISTRATE JUDGE